UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUIS ALBERTO PAREDES QUISPE,<br><br>               Petitioner,<br>    v.<br><br>MICHAEL T. ROSE, Acting Field Office Director of Enforcement and Removal Operations, Philadelphia Field Office, Immigration and Customs Enforcement; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAMELA BONDI, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; CRAIG A. LOWE, Warden of PIKE COUNTY JAIL,<br><br>               Respondents. | CIVIL ACTION NO. 3:25-CV-02276<br><br>(MEHALCHICK, J.) |

## MEMORANDUM

Petitioner, Luis Alberto Paredes Quispe ("Quispe"), a Peruvian national seeking asylum in the United States, brings this petition for writ of habeas corpus. (Doc. 1). On November 28, 2025, Quispe filed the instant petition, requesting that Respondents Michael T. Rose, Kristi Noem, Department of Homeland Security, Pamela Bondi, Executive Office for Immigration Review, and Craig A. Lowe ("Lowe")[1] release him from custody at the Pike

---

[1] The government asserts that pursuant to the "immediate custodian rule," the only proper respondent in this case is Craig A. Lowe ("Lowe"), Warden of the Pike County Correctional Facility. (Doc. 4, at 1). "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Quispe is detained at the Pike County Correctional Facility, Lowe is the proper respondent. (Doc. 1, at 4). All other respondents are **DISMISSED**. However, as Lowe is acting as an agent of the federal government by detaining Quispe on behalf of Immigration and Customs Enforcement ("ICE"), the government will be

County Jail in Milford, Pennsylvania or provide a bond hearing pursuant to 8 U.S.C. § 1226 within seven days. (Doc. 1). For the following reasons, Quispe's petition (Doc. 1) is **GRANTED,** and Lowe is **ORDERED** to release Quispe from custody.

I.     FACTUAL AND PROCEDURAL BACKGROUND

The following background and factual summary are derived from Quispe's petition and exhibits thereto. (Doc. 1). Quispe is a Peruvian national who entered the United States without inspection on November 1, 2022. (Doc. 1, at 11). Quispe subsequently encountered United States Border Patrol agents, but on November 3, 2022, he was released as an alternative to detention due to lack of bed space. (Doc. 1, at 11; Doc. 1-1, at 8-10). Since his release on November 3, 2022, Quispe has resided in the United States and lives in Upper Darby, Pennsylvania with his wife and minor child. (Doc. 1, at 11). On July 13, 2023, Quispe filed a timely application for asylum with United States Citizenship and Immigration Services, who transferred Quispe's application to the Immigration Court non-detained docket in June 2025. (Doc. 1, at 11). Quispe has complied with the conditions of his release and has no criminal record. (Doc. 1, at 11-12).

On November 21, 2025, Quispe reported to the Immigration and Customs Enforcement ("ICE") Philadelphia Office for a check-in appointment, where ICE detained him. (Doc. 1, at 4, 11). ICE transferred Quispe to the Pike County Correctional Facility, where he remains detained. (Doc. 1, at 11). Pursuant to 8 U.S.C. § 1229(a), the Department of Homeland Security ("DHS") placed Quispe in removal proceedings before the Elizabeth

---

bound by the Court's judgment. *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release).

Immigration Court. (Doc. 1, at 11). ICE charged Quispe with, *inter alia*, being inadmissible as someone who entered the United States without inspection under 8 U.S.C. § 1182(a)(6)(A)(i). (Doc. 1, at 11). Following his arrest and transfer to Pike County, ICE issued a custody determination to continue Quispe's detention without an opportunity to post bond or be released on other conditions. (Doc. 1, at 12).

Quispe filed a petition for writ of habeas corpus on November 28, 2025. (Doc. 1). Pursuant to the Court's Order to Show Cause (Doc. 2), Lowe filed a response to Quispe's petition on December 3, 2025. (Doc. 3). On December 5, 2025, Quispe filed a traverse. (Doc. 5). On December 5, 2025, Lowe filed a supplemental response to Quispe's petition for writ of habeas corpus. (Doc. 7). Accordingly, the petition is ripe for disposition.

## II.     LEGAL STANDARD

The district courts' power to grant the writ of habeas corpus is governed by 28 U.S.C. § 2241. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. When reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen

petitioner and granting the petitioner's habeas petition). While habeas relief typically involves release from custody, courts may order alternative relief such as prohibitions on removal in immigration related habeas cases, see *J. G. G.*, 604 U.S. at 673 (finding that a noncitizen detained by ICE may challenge removal in a habeas petition), or a bond hearing, if the Court determines that a noncitizen habeas petitioner is entitled to one under relevant constitutional or statutory protections. See *A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); see also *Cantu-Cortes v. O'Niell*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections).

### III. JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). Lowe contends that through numerous provisions of the Immigration and Nationality Act ("INA"), Congress has stripped federal courts of jurisdiction over challenges to the commencement of removal proceedings, including detention pending removal proceedings. (Doc. 7, at 2). Lowe further avers that, even if Quispe's petition overcomes the INA provisions stripping the federal courts of jurisdiciton, the Court still does not have jurisdiction because Quispe failed to exhaust his administrative remedies. (Doc. 7, at 2). Quispe counters that numerous district courts have determined that the INA's jurisdictional stripping provisions do not apply to petitioners like Quispe. (Doc. 5, at 20). Quispe also

4

contends that exhaustion of administrative remedies is unnecessary when the issue presented only concerns statutory construction and when exhaustion would be futile. (Doc. 5, at 26).

    A. THE INA DOES NOT LIMIT THE COURT'S JURISDICTION UNDER 28 U.S.C. § 2241.

28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States. . . in violation of the Constitution or laws or treaties of the United States" 28 U.S.C. § 2241(c)(1), (3). However, sections 1252(g), 1252(b)(9), and 1252(a) of the INA limit the authority of federal courts to grant writs of habeas corpus in immigration matters. *Jennings v. Rodriguez*, 583 U.S. 281, 292-96 (2018); *Kashranov v. Jamison*, No. 2:25-cv-05555-JDW, 2025 WL 3188399, at *3 (E.D. Pa. Nov. 14, 2025); *Del Cid v. Bondi*, 3:25-cv-00304, 2025 WL 2985150, at *12 (W.D. Pa. Oct. 23, 2025). Lowe asserts that each of these three sections limits the Court's authority to grant a writ of habeas corpus in this matter.

    1. **8 U.S.C. § 1252(g)**

First, Lowe asserts that § 1252(g) bars the Court from hearing a challenge to the method by which DHS chooses to commence removal proceedings, including the decision to detain Quispe pending removal. (Doc. 7, at 8). Quispe counters that Lowe's argument is contradictory because DHS commenced Quispe's removal proceedings in September 2024, before separately deciding to detain Quispe in November 2025. (Doc. 5, at 21). 8 U.S.C. § 1252(g) provides that "[e]xcept as provided in this section and notwithstanding any other provision of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g) does not apply to every claim that may "arise from" the Attorney

5

General's commencement, adjudication, or execution of removal orders against a noncitizen; rather, 8 U.S.C. § 1252(g) applies "just [to] those three specific actions themselves." *Jennings*, 583 U.S. at 294; *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *Kashranov*, 2025 WL 3188399, at *3. Quispe does not challenge the commencement of his removal proceedings, the Attorney General's decision to adjudicate his case, or the execution of a removal order. Quispe, instead, contests the legality of his detention under § 1225(b)(2). (Doc. 1). Accordingly, § 1252(g) does not bar the Court's jurisdiction over Quispe's writ of habeas corpus.

### 2. 8 U.S.C. § 1252(b)(9)

Next, Lowe submits that the Court does not have jurisdiction because judicial review of removal questions is only proper when a final removal order is before a federal court of appeals. (Doc. 7, at 9). Quispe asserts that § 1252(b)(9) does not apply to federal habeas corpus petitions that do not challenge final orders of removal. (Doc. 5, at 24). 8 U.S.C. § 1252(b)(9) provides that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien from the United States . . . shall be available only on judicial review of a final order [of removal]," and that "no court shall have jurisdiction, by habeas corpus under [28 U.S.C. § 2241] or any other habeas corpus provision . . . to review such an order or such questions of law or fact." In *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999), the Supreme Court clarified that § 1252(b)(9) bars district court review only for petitioners "asking for review of an order of removal," "the decision to detain them in the first place or to seek removal," "or the process by which their removability will be determined." Quispe does not seek review of a question of law or fact arising from a removal proceeding. Quispe seeks review of the Respondent's

interpretation of the statutory detention framework. (Doc. 1). As such, § 1252(b)(9) does not bar the Court's jurisdiction over Quispe's writ of habeas corpus.

### 3. 8 U.S.C. § 1252(a)(2)(B)(ii)

Finally, Lowe asserts that the Court may not entertain a challenge to a discretionary decision of the Attorney General or Secretary of Homeland Security under § 1252(a)(2)(B)(ii). (Doc. 7, at 13). Quispe counters that he is challenging his detention under § 1225 and his entitlement to a bond hearing, which are threshold legal questions, not matters of discretion. (Doc. 5, at 25). 8 U.S.C. § 1252(a)(2)(B)(ii) precludes district court review of decisions by the Attorney General or Secretary of Homeland Security "the authority for which is specified under the subsection to be in [their] discretion." Quispe's petition does not challenge a discretionary choice to detain him. Quispe challenges whether § 1225(b) was properly applied to him as a noncitizen living in the United States for three years. (Doc. 1). The scope of the government's statutory detention authority is "not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *Kashranov*, 2025 WL 3188399, at *3. Therefore, § 1252(a)(2)(B)(ii) does not bar the Court's jurisdiction over Quispe's writ of habeas corpus.

### B. ADMINISTRATIVE EXHAUSTION DOES NOT BAR THE COURT'S JURISDICTION UNDER § 2241.

A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, "exhaustion exists as a judicially created doctrine applied at the Court's discretion." *Kashranov*, 2025 WL 3188399, at *3 (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)); *Del Cid*, 2025 WL 2985150, at *13. Lowe contends that because Quispe has not exhausted his administrative remedies with the Board of Immigration Appeals ("BIA"), this matter should be dismissed or stayed. (Doc. 7, at 15). Quispe counters that Lowe does not articulate what administrative remedies Quispe should have taken, and

7

that such hypothetical remedies would have been a "fool's errand" because a statutory construction issue is presented, which if brought to the BIA before litigating in this court, would be futile. (Doc. 5, at 26-27).

No statute requires administrative exhaustion in habeas proceedings under § 2241. *Kashranov*, 2025 WL 3188399, at *3; *Del Cid*, 2025 WL 2985150, at *13. In habeas proceedings, "exhaustion exists as a judicially created doctrine applied at the Court's discretion." *Kashranov*, 2025 WL 3188399, at *3 (citing *McCarthy*, 503 U.S. at 144). Further administrative review serves no practical purpose. Quispe is detained pursuant to 1225(b)(2), under which immigration judges lack authority to hear bond requests. *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025); *Matter of Yajure Hurtado*, 29 I. &N. Dec. 216 (BIA 2025). Quispe will be precluded from obtaining a bond hearing if he seeks further administrative review, and these circumstances constitute good cause to excuse exhaustion. *Kashranov*, 2025 WL 3188399, at *3 (excusing exhaustion where petition is detained pursuant to 1225(b) and precluded from obtaining a bond hearing); *Del Cid v. Bondi*, 2025 WL 2985150, at *13 (excusing exhaustion of administrative remedies because the cases solely hinged on the statutory construction of § 1225 and § 1226).

IV. **DISCUSSION**

Having determined that the Court has jurisdiction to decide Quispe's petition, and further, that the petition is not barred by a failure to exhaust administrative remedies, the Court now turns to the questions of whether Quispe was improperly detained under 8 U.S.C. 1225(b)(2)(A), when he should have been detained under 8 U.S.C. § 1226(a), and, if he was improperly detained, whether Quispe's due process rights were violated. (Doc. 1, at 12-14; Doc. 3). Quispe contends that he should have been detained under § 1226(a), and since he

8

was improperly detained under §1225(b)(2)(A) and denied a bond hearing, he suffered a due process violation and should be released from detention. (Doc. 1, at 12-14). Lowe counters that Quispe was properly detained under §1225(b)(2)(A) and that an immigration detainee has no constitutional right to release on bond when held pursuant to a statutory provision, like §1225(b)(2)(A), that requires mandatory detention. (Doc. 3, at 23).

### A. Quispe was improperly detained under 8 U.S.C. 1225(b)(2)(A).

Quispe avers that because he has been residing in the United States for over three years, he can only be detained under 8 U.S.C. § 1226, which entitles him to a bond hearing. (Doc. 1, at 3, 6-11). Lowe contends that Quispe falls squarely within the statutory definition of noncitizens subject to detention pursuant to 8 U.S.C. § 1225(b)(2)(A), under which he is ineligible for release on bond. (Doc. 3, at 23).

The INA is a comprehensive statute regulating immigration, which has been repeatedly reworked by Congress since its enactment in 1952. *Kashranov*, 2025 WL 3188399, at \*1. In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009. 8 U.S.C. Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, and they may be released only "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov*, 2025 WL 3188399, at \*1. Two recent BIA decisions eliminated the

availability of bond hearings under § 1225(b)(2)(A). In *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), the BIA determined that an applicant for admission who is arrested and detained without a warrant while arriving in the United States and subsequently placed in removal proceedings is detained under § 1225 and ineligible for any subsequent release on bond. In *Matter of Yajure Hurtado*, 29 I. &N. Dec. 216 (BIA 2025), the BIA held that all noncitizens who enter the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for bond hearings.

To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde*, 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov,* 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to an alien who is both an "applicant for admission" and "seeking admission." *Kashranov*, 2025 WL 3188399, at *6; *Bethancourt Soto v Soto*, No. 25-cv-16200, 2025 WL 2976572, at *5 (D.N.J. Oct. 22, 2025) (collecting cases). The parties dispute whether Quispe is an applicant for admission and seeking admission under § 1225(b)(2)(A). (Doc. 3, at 16-32; Doc. 5, at 4-6)

Section 1225(a)(1) defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018). As the phrase "alien seeking admission" is not defined in § 1225, the Court must construe it based upon its ordinary meaning and statutory context. See *Kashranov*, 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval*, No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and across the country have determined that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United

10

States at a border or port of entry. *Kashranov*, 2025 WL 3188399, at *6; *Del Cid*, 2025 WL2985150, at *16 n. 7; *J.A.M.*, 2025 WL 3050094, at *3; *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at *2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at *13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), in which the Supreme Court determined that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 2025 WL 2976572, at *6. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning. *Kashranov*, 2025 WL 3188399, at *6.

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Certain noncitizens, who are already in the country, may be detained pending the outcome of their removal proceedings under § 1226(a). *Jennings*, 583 U.S. at 288-89. Section 1226(a) "[a]pplies to aliens already present in the United States" and "creates a default rule for those aliens by permitting – but not requiring – the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Cantu-Cortes*, 2021 WL 3171639, at *1 (citing *Jennings*, 583 U.S. at 303). Under § 1226(a), the Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). "Immigration authorities make an initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8

11

C.F.R. § 1236.1(c)(8), (d)(1)). At a bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); see *Kashranov*, 2025 WL 3188399, at *1.

On July 8, 2025, ICE and the Department of Justice ("DOJ") announced a new policy, which provides that all persons who entered the United States without inspection, regardless of when the person is apprehended, shall now be subject to mandatory detention provision under § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited Dec. 9, 2025); (Doc. 1, at 7-8). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are apprehended by ICE. *Cantu-Cortes*, 2021 WL 3171639, at *2 (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petition who lived in the United States for almost two years was not seeking admission but "already here"); *Del Cid v. Bondi*, 2025 WL 2985150 at *14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto,* 2025 WL 2976572 at *7 (collecting cases).

Here, § 1226(a), not § 1225(b)(2)(A), applies to Lowe's detention of Quispe. While Lowe asserts that Quispe is "seeking admission" to the United States because he has not been lawfully admitted, and as such he is subject to mandatory detention under §1225(b)(2)(A), the

12

Court finds that Quispe is not seeking admission into the United States. Quispe has been residing in the United States for three years. Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. Quispe is not actively attempting to come into the United States at a border or port of entry. Based on the plain meaning of the phrase "seeking admission", Quispe sought admission three years ago when he entered the United States on November 1, 2022, was apprehended by border patrol agents, and was subsequently released. (Doc. 1, at 11; Doc. 1-1, at 8-10); *see Kashranov*, 2025 WL 3188399, at *6 ("seeking admission describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization").

Instead, § 1226(a) applies to individuals, like Quispe, who have been residing in the United States for an extended period. *Cantu-Cortes*, 2021 WL 3171639, at *2 (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petition who lived in the United States for almost two years was not seeking admission but "already here"). Unlike § 1225(b)(2)(A), § 1226(a) provides for bond or conditional parole. As such, mandatory detention is not warranted for Quispe.

   B. QUISPE'S CONTINUED DETENTION UNDER § 1225(B)(2)(A) VIOLATES HIS
      DUE PROCESS RIGHTS.

Quispe avers that he has a fundamental interest in liberty and being free from official restraint, and that the government's detention of him without a bond hearing and determination of whether he is a flight or public safety risk violates his right to due process. (Doc. 1, at 13-14). Lowe counters that as an immigration detainee, Quispe has no

constitutional right to release on bond when held pursuant to a statutory provision requiring mandatory detention. (Doc. 3, at 34).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews*, 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Quispe's favor. Lowe has deprived Quispe of his physical liberty through improper detention without the possibility of bond under § 1225(b)(2)(A). *Hamdi v. Rumsfield*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects; *Soto*, 2025 WL 2976572, at *8. The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Quispe's favor, as Quispe remains erroneously detained without the possibility of release on bond pursuant to § 1225(b)(2)(A). *See Soto*, 2025 WL 2976572, at *8 (citing *Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept.

14

29, 2025); *Zumba v. Bondi,* No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov,* 2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error). Finally, the third *Mathews* factor, the government's interest, also weights in Quispe's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of aliens at future immigration proceedings and to prevent danger to the community. *Zadvydas,* 533 U.S. at 690; *Soto,* 2025 WL 2976572, at *8. Quispe poses no such risk to the government's interest in detaining him. Quispe has complied with the conditions of his release, even reporting to the ICE Field Office in Philadelphia despite the risk of detention. (Doc. 1, at 11-12; Doc. 5, at 19-20). Quispe has no criminal record, and Lowe does not allege that Quispe poses a fight risk or risk to the community. (Doc. 1, at 12; Doc. 3; Doc. 7). As each *Mathews* factor weighs in Quispe's favor, the Court finds that his continued detention violates his procedural due process rights.

V.     **CONCLUSION**

For the foregoing reasons, Quispe's petition for a writ of habeas corpus is **GRANTED**. (Doc. 1). Lowe is **ORDERED** to release Quispe from custody. Lowe is also permanently enjoined from re-detaining Quispe under § 1225(b)(2)(A). Quispe may move to reopen this matter if Lowe seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing.

An appropriate Order follows.

BY THE COURT:

Dated: December 10, 2025

/s/ *Karoline Mehalchick*<br>**KAROLINE MEHALCHICK**<br>**United States District Judge**